**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1486-24

MICHAEL SCIORE,

 Plaintiff-Appellant,

v.

THE PLANNING BOARD OF
LOGAN TOWNSHIP NEW
JERSEY and THREE EAGLES
NEST LLC, LOGAN TOWNSHIP
NEW JERSEY,

 Defendants-Respondents,

and

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

 Defendant.

_____

   Submitted February 3, 2026 – Decided February 18, 2026

   Before Judges Chase and Augostini.

   On appeal from the Superior Court of New Jersey, Law
   Division, Gloucester County, Docket No. L-0700-24.

Louis N. Magazzu LLP, attorneys for appellant (Louis N. Magazzu and Patrick J. McKeon, on the brief).

Archer & Greiner PC, attorneys for respondent Three Eagles Nest LLC (Robert W. Bucknam, Jr., of counsel; Jamie A. Slimm, on the brief).

Dale T. Taylor, attorney for respondent The Planning Board of Logan Township New Jersey, joins in the brief of respondent Three Eagles Nest LLC.

PER CURIAM

Plaintiff Michael Sciore appeals from a Law Division order dismissing his action in lieu of prerogative writs challenging the decision of defendant Logan Township Planning Board's ("Board") granting preliminary and final site plan approval to defendant Three Eagles Nest, LLC ("Three Eagles"). We affirm.

I.

In November 2021, the Board approved plaintiff's application for a General Development Plan ("GDP"), bulk variance and preliminary and final major subdivision for the Commodore North Development ("Property"), and use of three industrial buildings.[1] Specifically, the GDP related to Block 1002, Lots 1, 2, 3, 4, 5, 6, and 7 of Logan Township's tax maps. The approval was documented in Resolution 24-2021.

---

[1] These three buildings are referred to as "Building 1, Building 2, and Building 3."

In October 2022, Three Eagles applied to the Board for preliminary and final major site plan approval to begin construction on Building 1. At the December Board meeting, Three Eagles requested an adjournment to the January meeting. Plaintiff's counsel objected to the adjournment, because he was unavailable for the January meeting; alternatively, plaintiff's counsel requested further adjournment to the Board's February meeting. Notwithstanding, the Board elected to move forward with the application at its January meeting. The Board heard and approved Three Eagles' application.

In May 2023, plaintiff filed a complaint in lieu of prerogative writs and order to show cause with temporary restraints to reverse the Board's approval. In December, the trial court remanded the matter back to the Board after finding "[t]he [B]oard acted arbitrarily, capriciously, and unreasonably in denying [p]laintiff's request to either proceed with the hearing on December 8, 2022[,] or schedule it for a date other than January 12, 2023."

As a result, Three Eagles submitted a revised application to the Board. The Board held public meetings regarding the application on four dates between January and March 2024. Three Eagles presented the testimony of: (1) attorney Robert W. Bucknam, Jr.; (2) project manager Daniel Vignola; (3) project engineer Michael Citerone, P.E.; (4) traffic engineer Nathan B. Mosley, P.E.,

3

C.M.E.; (5) professional planner Lance B. Landgraf, Jr., P.P., L.B.; (6) project supervising engineer Mark Thompson, P.E.; (7) stormwater management specialist Ryan Harvey, P.E.; (8) consultant engineer Jesse Dougherty, P.E.; and (9) consultant engineer Kevin Webb, P.E.

In opposition, the Board heard: (1) public comments from ten community members, including plaintiff, mostly regarding traffic and disruptions to the residential areas near the Property; and (2) plaintiff's expert Clay Emerson, P.E., M.S., Ph.D., ("Dr. Emerson"). Mark Thompson and Ryan Harvey provided rebuttal testimony to Dr. Emerson.

On March 26, 2024, the Board voted to approve Three Eagles' application, conditional upon further review of certain calculations by the Board engineer's firm. Resolution 08-2024—which was adopted by the Board and memorialized the Board's approval of Three Eagles' application—articulating:

> The Board's engineer, Ms. Adamson, stated that her office needed additional time to review the information presented by Dr. Emerson. However, she stated that based on her examination of the documentation submitted by the Applicant, she recommended that the Board approve the Application, as submitted and that the Applicant agree, as a condition of approval, to work with her office to make any minor modifications to the plans and reports, as necessary. Should the Application require significant plan revisions, as determined by Ms. Adamson, Ms. Adamson requested that the Application

4

> be submitted by the Applicant to the Board for further review and decision.
>
> [(Emphasis added).]

Furthermore, Resolution 08-2024 outlines nine conditions of approval. Most relevant here, condition seven stipulates:

> The Applicant's professionals shall make revisions to the plans and reports as required by the Board during hearings, including the post-approval revisions to the stormwater design as recommended by the Board Engineer, pursuant to the Planning Board action, and comply with all of the representations made by the Applicant and/or Applicant's professionals, as is set forth in Findings of Fact above.
>
> [(Emphasis added).]

Plaintiff then filed a complaint in lieu of prerogative writs and a notice of motion seeking temporary restraints and reversal of the Board's approval of Three Eagles' application. The court denied temporary restraints and scheduled the matter for trial. Plaintiff argued for the first time in a reply brief argued that the Board did not have jurisdiction and the matter should have been heard by the Logan Township Zoning Board of Adjustment ("Zoning Board").

On December 6, 2024, the trial court heard plaintiff's complaint. Following oral argument, the court found that: (1) because jurisdiction was improperly raised in a reply brief, it would not adjudicate the issue; (2) "clear[ly]

5

. . . [the development] issue was thoroughly presented to the Board with extensive testimony, [and] the right to cross-examination[;]" (3) Three Eagles called two experts who refuted, "in tremendous depth," the testimony of Dr. Emerson; (4) the "[B]oard was presented substantial information in order to ultimately make its decision in this matter"; (5) the Board appropriately and fairly considered the issues raised by plaintiff in opposition; (6) the Board did not disregard or ignore plaintiff's expert, instead, the Board found that plaintiff's expert's contentions were "insufficiently supported by testimony and records.";  and (7) it was neither arbitrary, capricious, nor unreasonable for the Board to approve, with conditions, Three Eagles' application.  Accordingly, the court denied plaintiff's relief and dismissed his complaint with prejudice.

This appeal follows.

## II.

"The role of a court in reviewing the decision of a local board's land use decision is very narrowly circumscribed."  Scully-Bozarth Post #1817 of the VFW v. Planning Bd., 362 N.J. Super. 296, 314 (App. Div. 2003).  Accordingly, local boards are "allowed wide latitude in the exercise of delegated discretion." Medici v. BPR Co., 107 N.J. 1, 23 (1987) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)).  Their decisions are presumed valid.  Dunbar Homes,

Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 558 (2018); see also Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999) ("[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law."); Scully-Bozarth, 362 N.J. Super. at 314 ("Fundamentally, a reviewing court may not substitute its judgment for that of local officials . . . . It is not the role of the reviewing court to determine whether the decision of a local board was wise or unwise.").

Such a presumption of validity may be overcome if the board's decision was arbitrary, capricious, or unreasonable. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant or denial of a variance are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citation omitted).

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J.

Super. 552, 562 (App. Div. 2004)). "[A] court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Berardo v. City of Jersey City, 476 N.J. Super. 341, 353 (App. Div. 2023) (alteration in original) (quoting Price, 214 N.J. at 284). Further, municipal land-use determinations are afforded a presumption of validity that the challenging party has the burden of overcoming. See Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 289-90 (2001). However, we review questions of law, including the interpretation of an ordinance, de novo. Dunbar Homes, 233 N.J. at 559.

III.

On appeal, plaintiff argues that the court erred in: (1) not determining if the Board lacked jurisdiction; (2) failing to find the Board acted arbitrarily, capriciously, or unreasonably; and (3) failing to find the Board's approval of Three Eagles' application inconsistent with the facts and memorialized by a defective resolution. We address each argument in turn.

A.

Preliminarily, we address the trial court's refusal to hear whether the Board lacked jurisdiction because it was improperly raised in a reply brief. Whether subject matter jurisdiction exists is a question of law and therefore our review is de novo. Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430,

437-38 (App. Div. 2013).  Under that plenary standard of review, "[w]e 'owe[] no deference to the trial court's conclusions.'"  Int'l Bhd. of Elec. Workers Local 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 223 (App. Div. 2021) (second alteration in original) (quoting Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012)).

Procedurally, a party is not permitted to raise new or expanded arguments in a reply brief.  See State v. Smith, 55 N.J. 476, 488 (1970); see also Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper.").  However, "[t]he issue of subject matter jurisdiction may be raised at any time."  Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000); see also Lall v. Shivani, 448 N.J. Super. 38, 48 (App. Div. 2016); Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 359-60 (App. Div. 2014).

The legal principles regarding standing are applicable to planning and zoning boards because they act in a quasi-judicial manner.  See Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 54 (1998); Randolph v. City of Brigantine Planning Bd., 405 N.J. Super. 215, 225 (App. Div. 2009) (finding planning board members act in a quasi-judicial capacity).  Furthermore, a lack of

jurisdiction renders a municipal board's decision void.  Najduch v. Twp. of Independence Planning Bd., 411 N.J. Super. 268, 274 (App. Div. 2009).

While we acknowledge that plaintiff should have raised the jurisdiction issue earlier and understand why the trial court would not entertain the last-minute argument, subject matter jurisdiction is critical in providing legitimate judgments and may never be waived.  See Murray v. Comcast Corp., 457 N.J. Super. 464, 469-70 (App. Div. 2018).  Jurisdiction was a threshold issue the court should have ruled on notwithstanding plaintiff springing the question on the court and defendant at the last minute.

In limited circumstances, "[w]hen the trial judge fails to make the required findings of fact . . . the appellate court may avoid the necessity of a remand . . . by [] making findings of fact pursuant to the constitutional grant of necessary original jurisdiction and R[ule] 2:10-5." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2026) (citing Farmingdale Realty Co. v. Borough of Farmingdale, 55 N.J. 103, 106 (1969)).  Rule 2:10-5 provides that appellate courts may "'exercise . . . original jurisdiction as is necessary to the complete determination of any matter on review.'"  Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 146 (2022) (quoting R. 2:10-5).  However, that power should be invoked "sparingly," State v. Jarbath, 114 N.J. 394, 412 (1989), and is

10

generally used when the record is adequately developed and no further fact-finding is needed.  Price, 214 N.J. at 294-95; State v. Santos, 210 N.J. 129, 142 (2012).

"In determining whether to exercise original jurisdiction, an appellate court not only must weigh considerations of efficiency and the public interest that militate in favor of bringing a dispute to a conclusion but also must evaluate whether the record is adequate to permit the court to conduct its review."  Price, 214 N.J. at 295.  Generally, we have "exercised such jurisdiction to resolve a single issue to conclude litigation, or to end perpetual or lengthy litigation."  Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301 (2009).  Because the record in this matter is complete and this development project has been pending for years, in the interest of judicial economy, we will address that issue rather than remand to the Law Division.

Plaintiff's contention that the Board lacked jurisdiction to grant preliminary and final site plan approval is based on a reference in Resolution 08-2024 to a prior Zoning Board approval.[2]  He therefore argues that the Board did not have jurisdiction under N.J.S.A. 40:55D-76.  We are not persuaded.

---

[2]  Plaintiff has not provided us with a copy of the Zoning Board Resolution. However, defendant has provided us with Zoning Board Resolution 08-2020.

In preparation for the development of this project, the Zoning Board granted a variance under N.J.S.A 40:55D-70(d) ("(d) variance") in 2020 to construct a stormwater management basin ("basin") on the property. The (d) variance was approved because the basin in question was going to be the principal use on the property until the development was constructed and then it would become an accessory use that did not need a variance. This is evidenced by Resolution 08-2020 which reflects, "[t]he Applicant states that it is anticipated that the requested Use Variance approval will only be needed for a temporary period of time, as the standalone Stormwater Facility [Basin] ultimately will be a permitted accessory use on the Subject Property." The resolution further echoes, "[t]he Applicant points to the stand-alone character of the Stormwater Management Facility [Basin] as being temporary in nature." Resolution 08-2020 further states:

> 4. The Applicant should clearly indicate the anticipated length of period for the temporary basin use.
>
> RESPONSE: Please note that the proposed stormwater management basin and related improvements (the "Stormwater Management Facility") are not intended to be temporary improvements. Rather, it is the need for the requested Use Variance to allow for the development of the Stormwater Management Facility, as a standalone principal use, which may be temporary in nature. Use Variance Relief is likely to only be needed for a temporary period of time, since the

12

> Stormwater Management Facility is likely to ultimately be a permitted accessory use on the Subject Property. If and when an industrial building is constructed on and is being served by the proposed Stormwater Management Facility on the same Subject Property, the Stormwater Management Facility would become a permitted accessory use that would be incidental to and accessory to a permitted principal industrial building use on the same lot.

The Zoning Board also waived the requirement of full site plan review. Thereafter, the basin was constructed.

N.J.S.A. 40:55D-76(b) gives the Zoning Board "the power to grant to the same extent and subject to the same restrictions as the planning board, subdivision or site plan approval . . . whenever the proposed development requires approval by the board of adjustment of a variance pursuant to subsection [d]." This ensures that the zoning board retains control over all aspects of a development that necessitates a use variance, further underscoring its exclusive jurisdiction. Najduch, 411 N.J. Super. at 276-77; Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 558-59; see also Puleio v. N. Brunswick Twp. Bd. of Adjustment, 375 N.J. Super. 613, 622 (App. Div. 2005). Although approval for a (d) variance cannot be temporary, the need for one may be.

Conversely, the planning board has ancillary jurisdiction to grant variances under N.J.S.A. 40:55D-70(c), when the proposed development also

requires subdivision, site plan, or conditional use approval.  However, this jurisdiction does not extend to subsection (d) variances, which remain within the exclusive purview of the zoning board.  Kaufmann, 110 N.J. at 559; N.J.S.A. 40:55D-60.

In 2021, the Board approved plaintiff's application for a GDP, bulk variance, and preliminary and final major subdivision for the Property. Resolution 24-2021 documents that the Property will contain three new industrial buildings.  It also documents that the project will include three basins and a regional stormwater management facility.  At this juncture, the basin became an accessory use.  See Logan, N.J., Unified Development Ordinance art. III, § 7(V)(7)(c)(10).  That resolution and Board action has never been challenged.

Further, the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -171 ("MLUL") provides that a GDP approval may be granted by the Board and requires that the Board, and not the zoning board, grant any necessary subsequent site plan or subdivision approvals.  See N.J.S.A. 40:55D-39c(1) (authorizing the Board to grant GDP approval); N.J.S.A. 40:55D-45.1; N.J.S.A. 40:55D-45.3.

A-1486-24

Once the GDP was approved for warehouse use on the Property, the basin transitioned from a standalone principal use, subject to a (d) variance, into a permitted accessory use. Thus, the (d) variance merged into the GDP and was no longer needed when the Board granted preliminary and final site plan approval. Since the resolution challenged here recognizes that a GDP was granted for this project, this application and all subsequent applications were properly heard by the Board. Therefore, plaintiff's belated argument that the Board did not have jurisdiction fails.

B.

Plaintiff next argues the Board acted arbitrarily, capriciously, or unreasonably regarding the testimony of Dr. Emerson. To support this contention, plaintiff provides a list of twenty-four issues raised by Dr. Emerson which plaintiff alleges were ignored by the Board. This argument is without merit.

"It [is] within the province of the board . . . to accept or reject the opinions of [experts]." Allen v. Hopewell Twp. Zoning Bd. of Adjustment, 227 N.J. Super. 574, 581 (App. Div. 1988); See also Hawrylo v. Bd. of Adjustment, 249 N.J. Super. 568, 579 (App. Div. 1991) ("[a] board is free to accept or reject the opinions of a planner proffered by an applicant or objector"). "Although the

15

Board is not bound to accept the testimony of the expert, its determination must be made on a rational and reasonable basis." Reich v. Borough of Fort Lee Zoning Bd. of Adjustment, 414 N.J. Super. 483, 504-05 (App. Div. 2010); see also Ocean County Cellular Telephone Co. v. Twp. of Lakewood Bd. of Adjustment, 352 N.J. Super. 514, 537 (App. Div. 2002) (quoting Kramer, 45 N.J. at 288) (discussing a Board's ability to accept or reject testimony and stating: "[w]here reasonably made, such a choice is conclusive on appeal").

Resolution 08-2024 extensively lays out the factual findings of the Board. The Board articulates each of the contentions raised in opposition by Dr. Emerson, and further outlines each point raised in rebuttal by defendant's experts. Subsequently, Resolution 08-2024 reflects that the Board found "testimony submitted on behalf of [plaintiff] insufficiently supported by testimony and the records and does not demonstrate deficiencies in the plans." Furthermore, the mere fact—discussed further below—that the Board engineer needed to confirm hydraulic calculations offered in opposition by Dr. Emerson, definitively shows that the Board duly considered the opposing points raised by plaintiff's expert. Because the Board made its determinations on a rational and reasonable basis, the Board's determination to accept or reject expert testimony is no basis upon which to find that the Board ignored plaintiff's testimony.

Affording more credibility to Three Eagles' testimony as opposed to plaintiff's testimony does not render the Board's determination arbitrary, capricious, or unreasonable.

Nor are we persuaded by plaintiff's argument that the Board abused its discretion by voting to approve the application given the Board Engineer acknowledged she lacked specific expertise to review hydraulic calculations. Specifically, plaintiff asserts that he did not have the opportunity to hear the testimony, and subsequently cross-examine, whomever at the Board Engineer's firm reviewed the hydraulic conductivity calculations proffered by Dr. Emerson.

"[I]t is extremely important that conditions attached to site plan approvals become part of some record available to the public." Cox & Koenig, New Jersey Zoning & Land Use Administration, § 23-9 at 334 (Gann, 2025). In Lionel's Appliance Center, Inc. v. Citta, the court upheld a condition that required the applicant to redesign entrances and exits, subject to approval by the board engineer. 156 N.J. Super. 257, 261-62 (Law Div. 1978). Although the board in Lionel's delegated its authority, the court held such delegation was not improper because "the planning board . . . must rely upon professionals and their expertise in determining whether a site plan is appropriate." Id. at 270.

After Dr. Emerson's testimony had concluded, the Board Engineer made the following statements:

> There's been a lot of information that was given to our office today and at the last hearing. . . . I have experts in stormwater management. I will not review this right here today. I will not redo this right here today, but what I recommend is that our office take a look at the revised report that's been submitted to us, along with the revised set of plans in conjunction with Dr. Emerson's comments. And if revisions need to be made to the design, we will write a review letter. The Applicant will respond, update the plans as necessary, and . . . [] the plans will be revised.
>
> . . . .
>
> The one thing that I do want to look into, I do want to take a look at the one item here. I want to see if there's some validity to this. Basically, this calculation that . . . .Dr. Emerson gave to us this evening, this exhibit, showing that the conductivity may have been calculated incorrectly.
>
> I would like to have our office take a look at that. I cannot tell you on the spot if this is correct or not. I don't have the expertise specifically for this specific calculation, so that is the one thing that I would like to look into. . . . .
>
> . . . .
>
> . . . . We do have stormwater experts that can review this, that specific calculation, make certain that they're using the correct conductivity in their calculations. That's one issue that was brought up tonight that probably should be looked into.

A-1486-24

In response, plaintiff's counsel sought to reserve his right to cross-examine whoever at the Board Engineer's firm was going to review and opine on the calculations. Nevertheless, the Board Engineer stated:

> Yeah, I do not see an issue with the public health, safety and welfare with this design. It may need tweaks and I would recommend that the Board act on it accordingly and request a review letter from our office as a condition.

The Board required as a condition of approval " . . . revisions to the plans and reports as required by the Board during hearings, including the post-approval revisions to the stormwater design as recommended by the Board Engineer." The Board acted well within its authority in requiring this condition. See PRB Enters., Inc. v. S. Brunswick Planning Bd., 105 N.J. 1, 10 (1987) (allowing a planning board to impose conditions in conjunction with granting final site plan approval); W.L. Goodfellows and Co. of Turnersville, Inc. v. Washington Tp. Planning Bd., 345 N.J. Super. 109, 111-12, 117-18 (App. Div. 2001) (holding site plan approval should have been granted with the condition that the applicant acquire a drainage easement).

Furthermore, two weeks prior to Dr. Emerson's testimony, the Board requested that plaintiff submit his questions, in writing, so that they could be

addressed at the subsequent meeting; however, plaintiff never submitted his questions in advance. The trial court upon reviewing the transcripts stated:

> Plaintiff seems to be taking advantage of their failure to provide [questions] in advance by placing the engineer in an improper — in an unfair situation in suggesting that even though we provided later than we should have, even though we provided it at the last minute, now we're entitled to have all — an additional hearing on this additional information.

The Board is empowered to impose conditions upon approval, clearly articulated the conditions imposed, and has the authority to defer to the opinion of its engineer to determine the veracity of an applicant's assertions. Merely seeking input regarding a specific calculation is not an improper delegation of the Board's authority. See Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd., 420 N.J. Super. 193, 205 (App. Div. 2011) (citing to N.J.S.A. 40:55D-24 and N.J.S.A. 40:55D-53.2, we held that land use law "contemplates that a land use board will retain professional consultants to assist in reviewing and evaluating development applications."). Accordingly, the Board did not act arbitrarily, capriciously, or unreasonably, nor did the Board improperly delegate its authority.

Plaintiff also argues, regarding the basin, the Board's approval was based on insufficient information. Relying on Field v. Franklin, 190 N.J. Super. 326,

20

332-33 (App. Div. 1983), plaintiff attempts to bolster this assertion by highlighting that issues of drainage, sewage disposal, and water supply are of the utmost importance and require detailed analysis. This argument is without merit.

In Field, we maintained that where an "applicant fails to provide sufficient information on the fundamental elements of his plan, preliminary approval should be denied." 190 N.J. Super. at 333. However, Three Eagles provided sufficient information regarding each aspect of their application. Resolution 08-2024 outlines ten pages worth of facts that the Board considered, detailing sufficient evidence that was relied on. Moreover, witnesses for Three Eagles testified to the feasibility of each aspect of its application. As the trial court noted, "this [B]oard was presented substantial information in order to ultimately make its decision in this matter. That detail was captured in the resolution." While plaintiff may disagree with the Board's final determination, there is no support in the record for a finding that the Board acted arbitrarily, capriciously, unreasonably, or based its determination on facts unsupported by the record.

C.

Lastly, plaintiff argues that Resolution 08-2024 is deficient or conclusory and did not contain "sufficient findings, based on proofs submitted." We disagree.

In New York SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken, we found a resolution was conclusory because "it set forth no factual findings[,] it merely identifie[d] the applicant, describe[d] the proposed site, [and] summarize[d], in a cursory fashion, the testimony presented . . . ." Instead, we held resolutions must contain sufficient findings based on submitted proofs. 370 N.J. Super. 319, 332-33 (App. Div. 2004) (citing Medici v. BPR Co., 107 N.J. 1, 23-26 (1987)); see also Saadala v. East Brunswick Zoning Bd. of Adjustment, 412 N.J. Super. 541, 552 (App. Div. 2010) (finding a resolution conclusory because it "lack[ed] evidential support in the record").

Resolution 08-2024 articulates all findings of fact and testimony offered. The resolution here contains sixty-two findings of fact and ten Board conclusions; it is not conclusory, it outlines all the evidence adduced, the testimony provided, the Board's factual findings, and the Board's conclusions. Moreover, plaintiff's argument that the Board, in a conclusory fashion, rejected Dr. Emerson's testimony as baseless. The Board dedicated two pages of the resolution to outlining the rebuttal testimony offered against Dr. Emerson. After articulating the rebuttal testimony, the Board concluded Dr. Emerson's assertions were not supported by the testimony and record.

A-1486-24

To the extent that we have not addressed any of plaintiff's remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division