919 A.2d 122

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. AHMED F. ELKWISNI, DEFENDANT–APPELLANT.

Argued November 14, 2006—Decided April 17, 2007.

170

*Thomas J. Cammarata* argued the cause for appellant (*Cammarata, Nulty & Garrigan,* attorneys).

*Brandy B. Galler,* Assistant Prosecutor, argued the cause for respondent (*John L. Molinelli,* Bergen County Prosecutor, attorney; *Ms. Galler* and *John J. Scaliti,* Assistant Prosecutor, of counsel and on the brief).

Justice WALLACE, JR., delivered the opinion of the Court.

In the present case, with one judge dissenting, the Appellate Division held that defendant's right to remain silent was not violated when the prosecutor questioned him concerning portions of his testimony that were not included in his post-*Miranda*[1] statement. We affirm and hold that the prosecutor may cross-examine a defendant concerning inconsistencies between his or her post-*Miranda* statement to the police and testimony presented at trial.

## I.

We briefly recite the facts. On the evening of March 24, 2003, Jamal Darwish was working alone in his convenience store. Two young men, later identified as defendant Ahmed Elkwisni and co-defendant Ibrahim Samha, entered the store as Darwish was seated behind the counter. Defendant and Samha approached Darwish and demanded money. Samha held a pistol in his hand and used it to hit Darwish in his face and hand. After Darwish fell to the floor, defendant kicked him in the stomach. The two assailants then dragged Darwish to a position in the store that was out of the sight line of any customer who might attempt to enter through the front door. Defendant demanded the keys from Darwish, retrieved the keys, and locked the front door.

Samha and defendant secured Darwish's hands and feet with duct tape. Samha continued to demand money, and Darwish

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

eventually revealed where he kept the money. When defendant located the money, he became upset with the small amount and told Samha to "finish [Darwish] off."

While the robbery was taking place, several people realized something was wrong in the store. Malagros Rosario and her husband, Jason Vargas, had an apartment in the same building as the store. They heard strange noises and then overheard someone threaten Darwish. Vargas called the police. Around the same time, a customer attempted to enter the store, but the door was locked. The customer observed defendant attempt to open the cash register, and then defendant waved the customer off as if to indicate that the store was closed. The customer left, but soon returned to see Samha behind the counter removing phone cards from the wall display. The customer then called the police. A short while later, defendant and Samha received cell phone calls alerting them that the police were outside the store.

The Garfield police soon had the store surrounded. Because the front door was locked, the police started to remove the door from its hinges, but before they could complete that operation, defendant, Samha, and Darwish appeared and opened the door. The police rushed in and ordered the three men on the floor. Darwish was bleeding from his head and had duct tape on his hands. He quickly alerted the police that the two men had tried to rob him.

Defendant and Samha were arrested. Patrolman Richard Uram placed handcuffs on defendant, advised him of his *Miranda* rights, and moved him to a patrol car. A search of defendant revealed $176 in bills (eight $10 bills, thirteen $5 bills, and thirty-one $1 bills). After Patrolman Uram was informed that the police had not located a gun used in the robbery, he again administered *Miranda* warnings to defendant and questioned him about the location of the gun. Defendant initially denied knowledge of a gun, but after Patrolman Uram said that leaving a gun in a store might result in a child finding it, defendant revealed the location of the gun. The police searched that area and found a BB handgun.

Defendant was charged with kidnapping, armed robbery, aggravated assault, possession of a weapon for an unlawful purpose, terroristic threats, and possession of a weapon without a permit. At trial, defendant testified on his own behalf and raised the defense of duress. He testified that he was a criminal justice major at a local college and disputed much of Darwish's testimony. Defendant described how he and his friend Joudeh Ali planned to go to dinner, but Ali also asked Samha to join them. On the way to the restaurant, Samha asked Ali to stop at a convenience store in Garfield so he could collect some money from a friend. Defendant said that Samha entered alone, returned a short while later, indicated he needed to go back inside, and did so. Defendant eventually entered the store and saw Samha engaged in a struggle over a handgun with the store owner. Samha secured possession of the gun and pointed it at defendant. Samha forced defendant and Darwish to the back of the store where Samha directed defendant to take the keys and lock the front door. Defendant claimed he was fearful of Samha and followed his instructions as Samha demanded money from Darwish and ripped phone cards from the wall. Defendant watched Samha place duct tape on Darwish's hands before Samha instructed defendant to open the cash register. While defendant was at the cash register, he saw an individual at the door and motioned for help. Defendant claimed that he attempted to telephone the police, but Samha saw him and grabbed his cell phone.

Defendant testified that after the police arrived, he convinced Samha to give himself up and to open the front door. As soon as the door was opened, the police immediately grabbed defendant, placed him in handcuffs, and removed him to a police car. He denied that the police ever informed him of his rights before asking him what had happened. Defendant stated that he was afraid of Samha and feared the police would place him in the same patrol car with Samha. He claimed that his focus was on the police efforts to secure Samha, and therefore, he did not immediately respond to the police officer's questions. However, after the police placed Samha in a different patrol car, defendant said he

told the police what occurred in the store, describing how Samha pointed a gun at his head and stuffed money inside defendant's pocket.

Based on defendant's affirmative defense of duress, the prosecutor cross-examined defendant about his actions after the police arrived. The questions revolved around defendant's failure to immediately advise the police after his arrest that he was coerced by Samha to participate in the crime. Later, in summation, the prosecutor argued that a reasonable person would have immediately informed the police that he was coerced to participate in the crime if that were true.

The jury found defendant guilty of second-degree robbery and possession of a weapon without a permit, and not guilty of kidnapping, armed robbery, aggravated assault, terroristic threats, and possession of a weapon for an unlawful purpose. The trial court granted defendant's motion to impose a sentence one degree lower and imposed a concurrent four-year prison term subject to an eighty-five percent period of parole ineligibility under the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

On appeal, with one judge dissenting, the Appellate Division affirmed defendant's convictions. *State v. Elkwisni*, 384 *N.J.Super.* 351, 894 *A.*2d 1180 (App.Div.2006). The majority found no violation of defendant's right to remain silent, but remanded to the trial court for a new hearing on the admissibility of defendant's statement to the police concerning the location of the handgun. *Id.* at 357, 375–77, 894 *A.*2d 1180. The dissenting judge found a violation of defendant's right against self-incrimination, but would have affirmed the admissibility of defendant's statement to the police. *Id.* at 378, 894 *A.*2d 1180. Defendant appealed as of right and also filed a petition for certification on the remand issue. We denied defendant's petition for certification. 187 *N.J.* 492, 901 *A.*2d 955 (2006). The State did not appeal. Because the State did not appeal from the judgment remanding the issue of the admissibility of defendant's statement to the police, that issue is not before us. This appeal, which requires us to decide whether

defendant's right against self-incrimination was violated, is here as a matter of right because of the dissent in the Appellate Division. *R.* 2:2–1(a)(2).

## II.

Defendant argues that the prosecutor violated his right to remain silent during cross-examination and in summation when the prosecutor commented that defendant's behavior upon arrival of the police and his post-arrest silence demonstrated his lack of cooperation with the police, not duress. Defendant further asserts that it was plain error for the trial court not to give the jury an instruction limiting the use of that evidence to evaluating his credibility.

The State contends that the prosecutor's cross-examination of defendant and his comments in summation did not infringe on defendant's privilege against self-incrimination and did not violate the principles of our case law. The State urges that because this case is about defendant's conduct at the time of arrest and not his silence, the prosecutor properly used defendant's conduct and his post-arrest statements to undercut his duress defense. Further, the State asserts that the prosecutor sought to establish that defendant was uncooperative with the police at the scene to rebut defendant's testimony that he was cooperative. Finally, the State contends that the lack of a limiting instruction was not plain error, but urges that in the future, the jury should be instructed to limit such testimony to assessing defendant's credibility.

## III.

In New Jersey, the privilege against self-incrimination is not found in our State Constitution, but is rooted in our common law and codified by statute and our Rules of Evidence. *State v. Muhammad,* 182 *N.J.* 551, 567, 868 *A.*2d 302 (2005). Both *N.J.S.A.* 2A:84A–19 and *N.J.R.E.* 503 provide that "every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or

expose him to a penalty or a forfeiture of his estate." We have long recognized "that the right of an accused or a suspect to remain silent when in police custody or under interrogation has always been a fundamental aspect of the privilege in this state." *State v. Deatore,* 70 *N.J.* 100, 114, 358 *A.*2d 163 (1976). " 'Needless to say, a suspect is under no duty to give a statement; on the contrary he is privileged to say nothing.' " *Ibid.* (quoting *State v. Ripa,* 45 *N.J.* 199, 204, 212 *A.*2d 22 (1965)). Recently, we reaffirmed *Deatore* and held that "[o]ur state law privilege does not allow a prosecutor to use at trial a defendant's silence when that silence arises 'at or near' the time of arrest, during official interrogation, or while in police custody." *Muhammad, supra,* 182 *N.J.* at 569, 868 *A.*2d 302 (citations omitted).

The United States Supreme Court has also held that the use of a defendant's silence at the time of his arrest and after receiving *Miranda* warnings is a violation of the Due Process Clause of the Fourteenth Amendment. *Doyle v. Ohio,* 426 *U.S.* 610, 619, 96 *S.Ct.* 2240, 2245, 49 *L.Ed.*2d 91, 98 (1976). In *Doyle,* the Court declared that if a defendant receives *Miranda* warnings and elects not to give a statement, the State may not "impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story ... at the time of his arrest." *Id.* at 611, 96 *S.Ct.* at 2241, 49 *L.Ed.*2d at 94. The Court noted, however, that the State is not prohibited from using defendant's post-arrest silence when defendant testifies to "an exculpatory version of events and claims to have told the police the same version upon arrest ... [because] the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest." *Id.* at 619 n. 11, 96 *S.Ct.* at 2245, 49 *L.Ed.*2d at 98 (citation omitted).

Several years later, the Supreme Court emphasized that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements." *Anderson v. Charles,* 447 *U.S.* 404, 408, 100 *S.Ct.* 2180, 2182, 65 *L.Ed.*2d 222, 226 (1980). The Court held

that "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent . . . [because] the defendant has not remained silent at all." *Ibid.* (citations omitted).

We treat pre-arrest silence differently than we treat post-arrest silence. *Compare State v. Brown*, 118 *N.J.* 595, 613, 573 *A.*2d 886 (1990) (finding that "evidence of pre-arrest silence, particularly in the absence of official interrogation, does not violate any right of the defendant involving self-incrimination"), *with Muhammad, supra*, 182 *N.J.* at 569, 868 *A.*2d 302 (declaring that prosecutor not allowed to comment on defendant's silence "at or near" time of defendant's arrest). We decided *Brown* after the United States Supreme Court decision in *Jenkins v. Anderson*, 447 *U.S.* 231, 100 *S.Ct.* 2124, 65 *L.Ed.*2d 86 (1980). In *Jenkins*, the Court held that "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility." *Id.* at 238, 100 *S.Ct.* at 2129, 65 *L.Ed.*2d at 94–95. "[I]n general conformity with *Jenkins*," we reached that same conclusion under New Jersey law in *Brown, supra*, 118 *N.J.* at 613, 573 *A.*2d 886. In the companion case of the same name also decided today, we reaffirmed that principle. *State v. Brown*, 190 *N.J.* 144, 158, 919 *A.*2d 107, 116, 2007 *WL* 1119218 (2007).

In the present case, the Appellate Division carefully set forth the asserted offending questions and answers and summation by the prosecutor. *Elkwisni, supra*, 384 *N.J.Super.* at 371–76, 894 *A.*2d 1180. It is not necessary to restate the specific questions and answers. The Appellate Division framed the issue as "what are the limits of prosecutorial inquiry as to defendant's post-arrest silence, when defendant testifies at trial as to the substance of exculpatory statements he allegedly made at or near the time of his arrest." *Id.* at 370, 894 *A.*2d 1180. The majority concluded that "[o]nce a defendant testifies about statements he made to the police at or near the time of his arrest, the State must be permitted to cross-examine him regarding whether or not these alleged statements were actually made." *Ibid.*

The dissenting judge reasoned that *State v. Lyle*, 73 *N.J.* 403, 375 *A.*2d 629 (1977) dictates that the prosecutor violated defendant's right against self-incrimination when she questioned defendant concerning his "alleged failure to give the arresting officer the exculpatory explanation he offered to the jury in support of his duress defense—that co-defendant Samha forced him at gunpoint to participate in the robbery." *Elkwisni, supra,* 384 *N.J.Super.* at 378, 894 *A.*2d 1180 (citation omitted). The dissenting judge also found plain error in the failure "to give a limiting instruction on the permissible and impermissible inferences to be drawn from defendant's silence." *Id.* at 389, 894 *A.*2d 1180.

In *State v. Tucker*, 190 *N.J.* 183, 919 A.2d 130, 2007 *WL* 1119279 (2007), also decided today, we adopted the reasoning of the Supreme Court in *Anderson, supra,* that cross-examination " 'that merely inquires into prior inconsistent statements . . . makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.' " *Id.* at 189, 919 *A.*2d at 134 (citations omitted); *see also Muhammad, supra,* 182 *N.J.* at 566, 868 *A.*2d 302 (noting that prosecutor is entitled to argue to jury that defendant's statement to police at or near time of arrest was inconsistent with his attorney's argument of consent to sexual encounter).

In the present case, defendant's testimony that co-defendant Samha coerced him to participate in the attempted robbery was key to his duress defense. He testified that he was cooperative and told the police "what happened inside the store." In light of defendant's testimony, we agree with the majority of the Appellate Division that once defendant testified concerning statements he made to the police after his arrest about the coercion and intimidation he experienced in the store, the State may fairly cross-examine defendant concerning those statements. Additionally, the State could offer rebuttal testimony from the officer allegedly involved in those conversations. We find no error in the prosecutor's questioning of defendant's exculpatory testimony at

trial or in the rebuttal testimony to discredit defendant's testimony.

We have some reservation, however, concerning the prosecutor's cross-examination of defendant with regard to his silence at the time the police arrived and placed him under arrest. At one point, the prosecutor asked defendant: "Isn't it true that you did not—when the police arrived, did you run to the—to the front door and say, thank God you're here, I'm a prisoner in this store?" Defense counsel's objection to this question was overruled. The prosecutor however, did not repeat that question. Instead, she asked several slightly different questions concerning defendant's conduct in the store at the time the police arrived. Defendant stated that he could not run to the door because Samha was blocking his path and responded by inquiring, "how am I supposed to run past him?"

The dissent found that this line of questioning transgressed *Lyle. Elkwisni, supra,* 384 *N.J.Super.* at 383, 894 *A.2d* 1180. In *Lyle, supra,* an altercation between the defendant and Egbert Francis resulted in the defendant shooting Francis. 73 *N.J.* at 405, 375 *A.2d* 629. When the police located the defendant, he said "I shot him." *Id.* at 406, 375 *A.2d* 629. At trial, the defendant claimed that as a result of Francis lunging at him with a screwdriver, he grabbed a gun from a nearby desk drawer and shot Francis. *Id.* at 405, 375 *A.2d* 629. On cross-examination, the prosecutor questioned the defendant about when he first told the police about the episode with the screwdriver and why he had not related that story at the time of his arrest. *Id.* at 408, 375 *A.2d* 629. In summation, the prosecutor again focused on the defendant's failure to give his self-defense version to the police shortly after the killing. *Id.* at 409, 375 *A.2d* 629. This Court held that "it was manifestly improper to use defendant's silence to attack his self-defense theory as a fabrication." *Id.* at 410, 375 *A.2d* 629.

The State seeks to distinguish *Lyle* from the present case on the ground that here, defendant did not remain silent during the time period in issue, but spoke to the police. However, the

defendant in *Lyle* also testified that he did not remain silent, but told the detective on the way to the police station that the victim attacked him. *Id.* at 408, 375 *A*.2d 629. That adds an element of *Lyle* that we cannot distinguish from the present case.

In any event, in *Muhammad, supra,* we recently held that it was error to permit the prosecutor to question defendant about his silence "while in custody, under interrogation, or 'at or near' the time of his arrest." 182 *N.J.* at 558, 868 *A*.2d 302. Thus, in the absence of testimony by the defendant that he told the police what happened immediately upon his arrest, it was improper for the State to comment on his silence at the time they placed him under arrest. *Id.* at 573–74, 868 *A*.2d 302.

We do not find, however, that the prosecutor's brief transgression warrants a new trial. The improper questions were brief, and the one question concerning why defendant did not tell the police when they arrived that he was "a prisoner in this store" was objected to and was not repeated. The balance of that line of questioning was restricted to why defendant did not go immediately to the front door when the police arrived and defendant's answers that his path to the door was blocked by Samha were consistent with defendant's duress evidence. Under those circumstances, the questions asked of defendant and answered by him were harmless and could not have affected the outcome of the case. *See R.* 2:10–2.

### IV.

As previously noted, the majority of the panel concluded that "[g]iven the substantial evidence presented, we cannot conclude that the absence of such [a limiting] instruction [on the permissible and impermissible inferences to be drawn from defendant's silence] constitutes plain error." *Elkwisni, supra,* 384 *N.J.Super.* at 377, 894 *A*.2d 1180. Simply put, this case depended on whose side of the story the jury believed. The State presented substantial evidence that defendant was a voluntary participant in the crimes, while defendant testified that he acted under duress

when Samha forced him to participate in the robbery. The truthfulness of defendant's version of the events was the focal point of the prosecutor's questions and summation. We agree with the majority of the Appellate Division that the failure to give an instruction to limit the testimony concerning defendant's conduct and silence to assessing his credibility could not have changed the result. *See R.* 2:10–2.

The Appellate Division suggested that in the future, a limiting charge should be given and that it should inform the jury that (1) the defendant has the right to remain silent, and (2) no inference of guilt "should be drawn from his exercise of that right." *Elkwisni, supra,* 384 *N.J.Super.* at 377, 894 *A.*2d 1180. We agree. Stated differently, the trial court should, at a minimum, instruct the jury that such evidence should be limited to assessing defendant's credibility and that it may not be used in determining whether defendant is guilty or not guilty.

Our model criminal charges do not contain limiting instructions when testimony of this nature is admitted to assess defendant's credibility. We commend this issue to the Criminal Jury Charge Committee to recommend appropriate limiting instructions to assist our trial courts.

## V.

The judgment of the Appellate Division affirming defendant's convictions is affirmed.

*For affirmance*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.