# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3859-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MAURICE ROMERO,

     Defendant-Appellant.

_____

Argued May 4, 2021 – Decided May 20, 2021

Before Judges Yannotti, Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 87-04-0326.

Elizabeth C. Jarit, Deputy Public Defender II, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, of counsel and on the briefs).

Shiraz Deen, Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; Dina R. Khajezadeh, Assistant Prosecutor, on the brief).

Lauren Bonfiglio, Deputy Attorney General, argued the cause for amicus curiae Office of the Attorney General (Gurbir S. Grewal, Attorney General, attorney; Lauren Bonfiglio, of counsel and on the brief).

Avram D. Frey argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Gibbons PC and American Civil Liberties Union of New Jersey Foundation, attorneys; Lawrence S. Lustberg, Avram D. Frey, Alexander Shalom and Jeanne LoCicero, on the brief).

PER CURIAM

Defendant appeals from the amended judgment of conviction (JOC) entered by the Law Division following his resentencing pursuant to State v. Zuber, 227 N.J. 422 (2017). We reverse and remand for resentencing.

I.

In April 1987, after the Family Part waived jurisdiction, defendant and Casey Terry were charged with murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3), (4), (5), and (6) (counts three through six); robbery, N.J.S.A. 2C:15-1 (count seven); burglary, N.J.S.A. 2C:18-2(a)(1) (count eight); and theft, N.J.S.A. 2C:20-3(a) (count nine). Terry also was charged individually with arson, N.J.S.A. 2C:17-1(a) (counts ten and eleven), and defendant was charged with auto theft, N.J.S.A. 2C:20-3(a) (count

2

twelve).  On the eve of trial, Terry pled guilty to murder and aggravated sexual assault.

The evidence presented at trial showed that on the evening of December 3, 1986, defendant, Terry, and Anthony Evans went to the residence of E.S. and her husband M.S. intending to commit a burglary.[1]  At that time, defendant and Evans were fifteen years old, and Terry was sixteen.  E.S. was eighty-six, and M.S. was ninety-four years old.  M.S. was confined to a bed due to a stroke.

Terry broke into the house using a knife, and defendant and Terry went inside, wearing masks and gloves, while Evans remained outside as a lookout.  Evans testified that he saw defendant and Terry looking around the house for money.  He also saw Terry rape E.S. three times, and he repeatedly beat E.S. while defendant raped her.

Defendant testified that he went to the home with the intention of robbing E.S. and M.S.  He insisted that he had only attempted to sexually assault E.S. after seeing Terry rape her.  He said they did not find anything of value and left while E.S. was still alive.  Defendant then stole a car from a nearby garage.

---

[1]  We use initials to protect the identity of E.S., who was the victim of the sexual offenses.  See R. 1:38-3(c)(12).

A-3859-18

About five hours later, Terry returned to the home to retrieve the knife. He again raped and beat E.S., and then set fire to the house. The following morning, officials found E.S.'s body, bloody and naked. The body was a few feet from M.S., who was injured but still alive. That same morning, Evans heard about E.S.'s death. He went to the prosecutor's office and provided a statement. He also agreed to testify against defendant and Terry.

The doctor who performed the autopsy testified that E.S. had sustained injuries to her heart, brain, ribs, and nose. She had bruises and contusions about her face, eyes, and upper body. The doctor attributed E.S.'s death to "acute cardiac arrhythmia, associated with severe coronary arteriosclerosis and secondary to forcible rape and sodomy." She died shortly after being beaten.

The doctor noted that a toxicologist's report indicated that tests showed thirty-eight percent carbon monoxide in E.S.'s blood, which indicated she had inhaled smoke, but he denied this was a fatal amount. A forensic pathologist who testified on behalf of the defense stated that the cause of death was smoke inhalation, superimposed on preexisting severe heart disease, and that her death was not due to the beating.

The jury found defendant guilty of all charges. At the sentencing hearing on August 4, 1988, the court dismissed counts two (felony murder);

4

A-3859-18

counts three, five and six (aggravated sexual assault); and merged count nine (theft) with count seven (robbery).  The court sentenced defendant to life imprisonment with a thirty-year parole-bar on count one (murder); twenty years' imprisonment with a ten-year parole-bar on count four (aggravated sexual assault); twenty years' imprisonment with a ten-year parole-bar on count seven (robbery); ten years' imprisonment with a five-year parole-bar on count eight (burglary); and five years' imprisonment on count twelve (auto theft).

The court ordered the sentences for murder, aggravated sexual assault, and auto theft would be served consecutively, and the other sentences would be served concurrently.  Defendant's aggregate sentence was life plus twenty-five years' imprisonment with forty years of parole ineligibility.[2]

Defendant appealed from the JOC dated August 4, 1988.  We affirmed defendant's convictions and sentence.  State v. Romero, No. A-0315-88 (App. Div. Oct. 4, 1990).  Thereafter, the Supreme Court denied defendant's petition for certification.  State v. Romero, 127 N.J. 324 (1990).  Defendant later filed two petitions for post-conviction relief, which were denied.  State v. Romero,

---

[2]  The court also sentenced Terry to life imprisonment, with thirty years of parole ineligibility, for the murder, and a consecutive term of twenty years' imprisonment, with ten years of parole ineligibility, for aggravated sexual assault.

No. A-4192-06 (App. Div. Oct. 10, 2008); State v. Romero, No. A-4246-10 (App. Div. Apr. 2, 2013), certif. denied, 216 N.J. 8 (2013).

On September 5, 2017, defendant filed a motion to correct what he claimed was an illegal sentence and sought resentencing pursuant to Zuber, 227 N.J. 422, and Miller v. Alabama, 567 U.S. 460 (2012). He argued that his sentence was the practical equivalent of life imprisonment without parole, and the consecutive sentences resulted in an excessively lengthy term of imprisonment for a juvenile.

The State opposed the motion. The State argued that Zuber and Miller did not apply because defendant had not been sentenced to life imprisonment without parole or the functional equivalent of such a sentence. The State noted that defendant would be eligible for parole when he is fifty-five years old.

On May 4, 2018, the judge heard oral argument and continued the matter to allow the parties to obtain and provide the court with additional information. On September 5, 2018, the judge issued a written opinion and order, granting defendant's motion for resentencing. The judge found that defendant had been sentenced to a sufficiently lengthy sentence to warrant review under Zuber. The State filed a motion for leave to appeal from the court's September 5, 2018 order. On October 11, 2018, we denied the State's motion.

6

The trial court conducted the resentencing hearing on October 19, 2018, and entered an amended JOC, which reduced defendant's sentence for the aggravated sexual assault to sixteen years' imprisonment, with an eight-year parole-bar. In all other respects, the sentence remained the same. The judge sentenced defendant to an aggregate term of life imprisonment plus twenty-one years, with a thirty-eight-year period of parole ineligibility. The judge filed an amended JOC on October 31, 2018. This appeal followed.

Thereafter, we granted defendant's motion to supplement the record on appeal with data and statistics concerning decisions by the New Jersey State Parole Board on certain initial applications for parole. We also invited the Attorney General to participate in the appeal as amicus curiae. In addition, we granted a motion by the American Civil Liberties Union of New Jersey (ACLU-NJ) for leave to participate as amicus curiae.

On appeal, defendant argues that the resentencing court failed to undertake the analysis required by Zuber, Miller, and Montgomery v. Alabama, 577 U.S. 190 (2016). Defendant further argues that the court failed to properly analyze whether his sentences should run consecutively under a heightened review of the criteria in State v. Yarbough, 100 N.J. 627, 643-44

A-3859-18

(1985), required by Zuber. He argues that the matter should be remanded for resentencing.

The State argues that defendant was not entitled to resentencing under Zuber and Miller because he was not sentenced to life imprisonment without parole or its functional equivalent. The State also argues that the sentence imposed on resentencing is not excessive and was based on a thorough consideration of the Miller factors. In addition, the State argues that the resentencing court properly decided to impose consecutive sentences.

## II.

We note initially that a reviewing court will not disturb a criminal sentence unless the trial court failed to follow the sentencing guidelines, the court's findings regarding the aggravating and mitigating factors are not supported by "competent and credible evidence in the record," or application of the guidelines renders the sentence "clearly unreasonable so as to shock the judicial conscience." State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). The constitutionality of a sentence is an issue of law, which we review de novo. State v. Patel, 239 N.J. 424, 435 (2019) (citing State v. Quaker Valley Farms, LLC, 235 N.J. 37, 55 (2018)).

In Miller, the Court held that the Eighth Amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479. In so ruling, the Court built upon prior decisions, which had established that "children are constitutionally different from adults for purposes of sentencing" because they "have diminished culpability and greater prospects for reform," and thus "are less deserving of the most severe punishments." Id. at 471 (quoting Graham v. Florida, 560 U.S. 48, 68 (2010)).

The Miller Court noted that a mandatory life sentence without parole for juveniles who are convicted of homicide

> [1.] precludes consideration of [the juvenile's] chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2.] It prevents taking into account the family and home environment that surrounds him – and from which he cannot usually extricate himself – no matter how brutal or dysfunctional.
>
> [3.] It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.
>
> [4.] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth – for example,

9

A-3859-18

his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

[5.] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

[Miller, 567 U.S. at 477-78.]

In Miller, the Court did not preclude the possibility of a life sentence without parole for a juvenile convicted of homicide, but the Court noted that such a sentence may not be mandatory and should be "uncommon" because of the difficulty in concluding that, at an early age, a particular juvenile is irreparably corrupt. Miller, 567 U.S. at 479 (citing Graham, 560 U.S. at 68 and Roper v. Simmons, 543 U.S. 551, 573 (2005)).

Thus, in a "rare" case in which the juvenile's "crime reflects irreparable corruption" or incorrigibility, the court may imprison a juvenile offender for life. Id. at 479-80. However, the sentencing court may not "at the outset" determine that the juvenile will forever pose a risk to society. Graham, 560 U.S. at 75.

Instead, the juvenile must be provided "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 75. The Court did not define "meaningful opportunity" and noted that "[i]t is for

the State, in the first instance, to explore the means and mechanisms for compliance." Ibid.

In Montgomery, the Court held that Miller should be applied retroactively, and that where a sentence was imposed contrary to Miller, the constitutional infirmity could be remedied by resentencing or consideration for parole. 577 U.S. at 208-09. The Court stated that, "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity – and who have since matured – will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. at 212.

The Zuber Court applied the principles enunciated in Miller to any life sentence without parole or aggregate term that is "the practical equivalent of life without parole." 227 N.J. at 447. The Court noted that the focus should be "on the real-time consequences of the aggregate sentence." Ibid. The trial court should not use life-expectancy tables when deciding whether a lengthy sentence is the practical equivalent of a life term without parole. Id. at 450.

Thus, the trial court must consider the Miller factors when sentencing a juvenile to "a lengthy period of parole ineligibility for a single offense." Id. at 447. The court should "do the same" when deciding whether to run counts

A-3859-18

consecutively, as consecutive terms often drive the length of the aggregate sentence. Ibid.

The Court pointed out that in Yarbough, it had adopted criteria to assist the trial courts in deciding whether to impose consecutive sentences. Id. at 449 (citing Yarbough, 100 N.J. at 643-44). The Court noted, however, that Yarbough does not address the Miller factors. Id. at 450. The Court stated that, in view of the "overriding importance" of Miller, trial judges must "exercise a heightened level of care before imposing multiple consecutive sentences on juveniles." Ibid.

The Court encouraged the Legislature to examine the issue of providing juvenile defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 452 (quoting Graham, 560 U.S. at 75). The Legislature has since considered proposed legislation on this issue, but such legislation has not been enacted. See State v. Tormasi, 466 N.J. Super. 51, 65 n.6 (App. Div. 2021).

III.

We briefly summarize the relevant facts and procedural history of defendant's initial sentence and resentencing.

A.  Avenel Report.

Before his initial sentencing, defendant was evaluated at the Adult Diagnostic and Treatment Center at Avenel.  Defendant told the examiner he had not been sexually aroused by violent conduct and claimed he only attempted to sexually assault E.S. so that he would be "accepted" by Terry.  He denied physically assaulting the victims and said he did not participate in the murder of E.S.  He stated that his focus was on money only, and he believed he had been wrongly convicted of crimes he did not commit.

In his report, the examiner noted that defendant had previously been adjudicated for shoplifting, burglary, and joyriding, and had received a probationary term.  Defendant had committed the present offenses while on probation.  The evaluator noted that defendant had scored at the "lower limit" of the classification for intellectual functioning but stated that his "intellectual capacity" may be "somewhat higher" than the test results showed.  He displayed "some degree of anxiety" regarding interpersonal relationships and feelings about his "early home environment."

An examination of defendant's personality showed a profile similar to persons who are "angry, sullen and demanding . . . ."  Such individuals typically are "rigidly argumentative and difficult in social relations" and tend

13

to "harbor depression, irritability, suspiciousness and defects in their judgment." The examiner noted that defendant had been cooperative in his psychological interview. Defendant said his mother had raised him, and he had followed in his brother's footsteps of "getting in trouble" after his brother "got locked up."

The examiner found defendant was not eligible for sentencing as a sex offender because his present offenses were not part of "a repetitive, compulsive pattern of aberrant sexual behavior." The examiner noted that defendant showed no remorse, other than remorse at being caught. The examiner wrote that defendant felt "entitled to take what he wish[ed] from others, regardless of the deleterious consequences of this behavior" and noted that defendant suffered from "a rather extreme antisocial personality disorder."

B. Presentence Report (PSR).

The PSR indicated that defendant and his brother are twins, and they have three older brothers and four older half-sisters. Defendant's parents separated when he was young, and his father moved to Boston. His mother relied on public assistance to support the family.

According to the PSR, defendant's mother did not provide structure or parental control. She also showed no interest in defendant's education.

14

Defendant only completed sixth grade, and he was described as a "straight 'F' student."

The PSR also indicated that defendant had admitted that he used marijuana and alcohol, and that he sold drugs. Regarding the present offenses, defendant stated that his only intention was to steal from E.S. and M.S. He said that Terry previously had stolen from E.S. and M.S., and he believed they would be an easy target.

C. Defendant's Arguments at the Sentencing Hearing.

Defendant's attorney asserted that defendant had a difficult childhood and his incarceration at the juvenile facility during the previous year had been beneficial to him. Counsel noted that defendant was in the process of obtaining a General Educational Development degree (GED), and he had developed an understanding of his culpability, which indicated he could be rehabilitated.

Defense counsel also asserted that defendant's lack of education and his upbringing had a negative effect on his ability to communicate with others. He argued that defendant's prior offenses were not serious, and he urged the court to impose a sentence that is less severe than the sentence the court had imposed on Terry.

A-3859-18

Defendant addressed the court. He stated he was innocent of murder and sexual assault.

D. The Court's Findings and the Initial Sentence.

The sentencing judge found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense); and two, N.J.S.A. 2C:44-1(a)(2) (gravity and seriousness of harm to the victims). The judge noted the especially "heinous cruel or depraved manner" in which defendant had committed the offenses.

In addition, the judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors.

The judge gave "the greatest weight" to aggravating factors one, two, and three, and little weight to aggravating factor six. The judge stated that aggravating factor nine was almost "superfluous" in light of the punishment defendant faced. The judge emphasized that defendant was just as culpable as Terry.

A-3859-18

The judge determined that the sentences for murder, aggravated sexual assault, and auto theft should run consecutively because they were separate offenses. As noted previously, the judge sentenced defendant to an aggregate term of life plus twenty-five years' imprisonment, with forty years of parole ineligibility. Defendant was seventeen years old at the time he was sentenced.

E. Defendant's Motion for Resentencing.

Defendant submitted a letter to the court in which he stated that he had grown while in prison. He recounted his childhood. He said that, as a child, he had often gone hungry, and that the family often lacked basic necessities. Defendant stated that by the time he was ten years old, he was regularly skipping school and "running around" the streets. By age thirteen, he was regularly stealing items his mother could not afford. He said he was an alcoholic, like his father and three siblings.

Defendant noted that when he entered prison, he was reading at the third-grade level, but he had earned his GED and an Associate's Degree in psychology and social services. He had two courses to complete to earn a Bachelor's Degree in criminal justice from Rutgers University. Defendant stated that his current grade point average was 3.67, and that Rutgers had offered him admission to its Masters' Program.

A-3859-18

Defendant also stated that he had begun to understand his anti-social disorder, and he had developed an understanding of his criminal behavior. He expressed guilt and self-hate for the person he had been, and he expressed sympathy and remorse for the pain he had caused to the victims' family. He said that, as a juvenile, he did not understand remorse.

Defendant noted that during his incarceration, he sought help and guidance from other inmates, social services, and the church. He had completed certain institutional courses on behavioral modification and anger management. He took responsibility for his criminal conduct and the suffering he caused. Defendant also discussed a Bible that E.S.'s daughter had sent to him with a letter saying she had forgiven him. He stated that this continued to motivate him to be a better person.

Two of defendant's brothers wrote letters to the court. They confirmed the family's poverty and the lack of parenting they received as children.

Defendant's counsel emphasized defendant's educational achievements, and the institutional courses defendant had completed while incarcerated. Counsel noted that defendant had only four or five disciplinary infractions while in prison, the last of which occurred twelve-to-thirteen years earlier.

A-3859-18

Counsel explained that defendant's most serious institutional infraction was for assault, but that had occurred early in defendant's prison term.

Defendant addressed the court. He apologized to the victims' family. He assured the court that he was not the same as the person who committed the offenses. Defendant said he recognized that he had chosen to commit the crimes and his decision led to E.S.'s death. He stated that he would regret his actions for the rest of his life.

Defense counsel argued that aggravating factor three (risk that defendant will commit another offense) no longer applied. Counsel asserted that the court should find mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (lack of criminal history); eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to recur); and nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude indicate he is unlikely to commit another offense). Counsel argued that the court should reduce defendant's sentence to fifty years with a thirty-year parole-bar and that the sentences should run concurrently.

F. The Resentencing Decision.

The judge found mitigating factor seven but mitigating factors eight and nine did not apply. The judge took note of defendant's college degree and his

A-3859-18

"astounding" grade point average. The judge noted that defendant had not committed any crime in the previous thirteen years, and this showed he had matured and gained a sense of responsibility.

The judge pointed out that defendant had spoken "intelligently" and conveyed a sense of pride in his accomplishments. Defendant had admitted his criminal conduct and expressed remorse, apologized to the victims' family, and did not attempt to minimize or make excuses for his behavior. The judge found that defendant had "in fact, rehabilitated himself."

Without further discussion, the judge adopted the other findings on the sentencing factors that the court made when defendant was first sentenced. The judge concluded that in light of Zuber and the Miller factors, as well as mitigating factor seven, defendant was entitled to a reduction in his sentence. The judge found that no change in the sentence for murder was warranted because defendant was "clearly involved" in that "heinous[]" crime.

The judge found, however, that the sentence for aggravated sexual assault should be reduced from twenty years, with a ten-year parole-bar, to sixteen years, with an eight-year parole-bar. The judge did not change the sentences for robbery, burglary, or auto theft, and noted that these sentences had no "practical effect" on defendant's parole eligibility.

A-3859-18

Regarding the Yarbough factors, the judge stated that over the years, there had been a movement away from consecutive sentences where the defendant had committed a series of crimes in a short period of time. The judge noted that defendant had committed the present offenses "in one significant, heinous situation."

However, the judge made no change to the consecutive sentences previously imposed for murder, aggravated sexual assault, and auto theft. Therefore, the judge reduced defendant's aggregate term from life plus twenty-five years, with a forty-year parole-bar, to life plus twenty-one years with a thirty-eight-year parole-bar. The judge memorialized his findings in the amended JOC dated October 31, 2018.

IV.

As noted, the State argues that defendant was not entitled to resentencing under Zuber and Miller because defendant was not sentenced to life imprisonment without parole or the functional equivalent of such a sentence. Defendant argues, however, that we should not consider the State's argument because the State did not file a cross-appeal from the amended JOC filed following the resentencing.

21

We decline to consider the State's argument that the trial court erred by resentencing defendant. We will not consider an argument that a party failed to raise properly in a cross-appeal. See State v. Elkwisni, 190 N.J. 169, 175 (2007) (refusing to consider issue raised by State because it did not appeal from the judgment remanding the issue to the trial court); State v. Pescatore, 213 N.J. Super. 22, 30 (App. Div. 1986), aff'd, 105 N.J. 441 (1987) (holding that defendant was barred from raising argument because a cross-appeal was not filed).

The State argues, however, that its failure to file a cross-appeal does not preclude the court from considering its argument that resentencing was not required. It contends the argument may be raised as harmless error. We disagree. We are convinced that the State may not challenge the trial court's order of September 5, 2018, which granted defendant's motion for resentencing, because the State did not file a cross-appeal from that order.

V.

Defendant argues that in reviewing the trial court's resentencing, we should consider whether the State, in fact, provides juvenile defendants with a meaningful opportunity for release, as required by Graham, Miller, and Zuber. In support of that argument, defendant has supplemented the record on appeal

22

with parole data, which he contends shows the State does not, in fact, provide juvenile defendants with a meaningful opportunity to obtain parole release.

Defendant notes that the information provided by the Parole Board shows that in the period from January 1, 2012, through December 31, 2019, ninety-one percent of inmates sentenced to life imprisonment were not granted parole when they first become eligible. Defendant asserts that the data also shows the inmates with life sentences who were initially denied parole received "lengthy" future eligibility terms (FET).

Defendant notes the data indicates that 40.4% of those inmates received an FET of three years or less; 28.8% received an FET of between four and nine years and two months; 22.7% received an FET of ten years; and 6.4% received an FET of more than ten but less than twenty years. Defendant contends these statistics show that he has a slim chance of being paroled when he first becomes eligible.

The ACLU-NJ also contends that the parole data is relevant to determining if New Jersey provides a meaningful opportunity for inmates sentenced to life imprisonment to obtain release on parole. The ACLU-NJ contends that for the possibility of parole to cure an otherwise disproportionate

23

juvenile sentence, there must be a probability of release if the juvenile can show maturation and reform.

The ACLU-NJ argues that the resentencing court erred by failing to order the State to produce the relevant parole data. It further argues that if the matter is remanded for resentencing, the trial court should consider whether New Jersey's parole process ensures proper consideration of a juvenile's maturation and reform.

We decline to consider defendant's contention that based on the parole data provided, the State does not provide inmates with life sentences a meaningful opportunity for release when they first become eligible for parole. The parole data that defendant relies upon was presented for the first time on appeal, and the State did not have an opportunity to challenge defendant's characterization of the data. In addition, the trial court made no findings or decision on this issue.

Moreover, in Tormasi, a panel of this court determined that parole data of the sort defendant relies upon is not probative as to whether the State's parole process provides a meaningful opportunity for release when an inmate first becomes eligible for parole. 466 N.J. Super. at 69. In that case, the defendant had murdered his mother when he was sixteen years old. Id. at 56.

The defendant was tried as an adult, found guilty, and sentenced to life imprisonment, with thirty years of parole ineligibility. Ibid. He filed a motion seeking resentencing under Zuber and argued that he had been sentenced to the practical equivalent of a life sentence without parole. Id. at 57. The panel held that the sentence was not the functional equivalent of life without parole. Id. at 60.

The court also rejected the defendant's contention that, based on parole data and other information, it was likely that: the defendant would be denied parole when he first becomes eligible, a FET will be established, and he will serve substantially more than thirty years before he is released. Id. at 67. The court noted that defendant's claim that he will be denied parole was "entirely speculative." Id. at 68.

The court refused to consider the defendant's contention that the Parole Board probably will deny him parole because it does so frequently when persons convicted of murder first become eligible. Id. at 68-69. The court stated that the fact that other convicted murders have been initially denied parole was presumably based on individualized consideration of regulatory factors. Id. at 69. The court held that "data showing the frequency of parole denial is not probative." Ibid.

A-3859-18

We agree with the decision in Tormasi and similarly conclude that the parole data relied upon by defendant and the ACLU-NJ in this case is not probative as to whether New Jersey's parole process provides juvenile defendants sentenced to lengthy terms of imprisonment a meaningful opportunity for release. The data that defendant has presented encompasses both adult and juvenile defendants. Moreover, the data does not reflect the significant subjective and objective considerations that bear upon any parole decision.

When a defendant is eligible for parole, the Board is required to consider the matter in accordance with the applicable statutory standard for parole. See Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 194 (App. Div. 2019) (noting that parole for persons convicted of offenses committed before August 18, 1997 is governed by the standards in N.J.S.A. 30:4-123.53(a) and 30:4-123.56(c) before those statutes were amended on that date) (citing Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000)).

Moreover, the Board makes its parole decisions based on all pertinent factors including those enumerated in N.J.A.C. 10A:71-3.11(b). Those decisions are "highly predictive and individualized discretionary appraisals." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting Beckworth v.

N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). In making its decisions, the Board must assess "a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Ibid. (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10 (1979)).

Therefore, data and statistics reflecting the Parole Board's decisions regarding other inmates is not predictive or probative as to whether the State's parole system provides any particular inmate, such a defendant, a meaningful opportunity for release when that individual first becomes eligible for parole. Thus, the parole data relied upon by defendant and the ACLJ-NJ has no bearing on whether the State's parole system affords defendant a meaningful opportunity for release.

## VI.

Defendant argues that the trial court failed to make the required analysis and findings in the resentencing. Defendant contends the resentencing court did not make appropriate findings on the aggravating and mitigating factors and failed to address all of the Miller factors. He also contends the court again imposed consecutive sentences but failed to review those sentences under the "heightened level of care" required by Zuber.

27

Defendant argues that the judge's rationale for finding aggravating factor three (risk that defendant will commit another offense) is inconsistent with the findings that he has rehabilitated himself and taken responsibility for his actions. He argues that the judge should have found mitigating factors eight (defendant's conduct was the result of circumstances unlikely to recur) and nine (defendant's character and attitude indicate he is unlikely to commit another offense).

Defendant also contends the judge erred by finding aggravating factor one (nature and circumstances of the offense, including whether the offense was committed in an "especially heinous, cruel or depraved manner"). He contends that finding is inconsistent with the principle that an individual may not be vicariously accountable for aggravating factors that pertain to an accomplice.

Defendant further argues that the judge erred by failing to make adequate findings on each of the <u>Miller</u> factors. In addition, defendant argues that the resentencing court failed to make appropriate findings regarding the consecutive sentences. He notes that the court did not consider those sentences in light of the <u>Miller</u> factors. He also asserts that the court failed to properly consider and assess the <u>Yarbough</u> criteria.

28

We note that "critical to the sentencing process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence." State v. Case, 220 N.J. 49, 66 (2014). The court's findings must be supported by a "reasoned explanation" and "grounded in competent, credible evidence in the record." Id. at 67.

Here, the resentencing court adopted the initial sentencing judge's findings of aggravating factors without an adequate explanation. The court merely underscored the heinous nature of the crimes. The court failed to address defendant's contention that it should not find aggravating factor three because initially, the sentencing court based that finding in part on defendant's lack of remorse.

However, on resentencing, defendant indicated that he now takes responsibility for his criminal conduct, and the judge found that his acceptance of responsibility was credible. The judge failed to explain the apparent inconsistency between the finding that defendant had been rehabilitated and his finding of aggravating factor three and his refusal to find mitigating factors eight and nine.

In addition, the judge did not address whether the finding of aggravating factor one was based on the "heinous, cruel or depraved manner" in which defendant acted or whether that finding was based on the "heinous, cruel or depraved manner" in which Terry acted. As defendant points out, when determining the aggravating factors, a defendant may not be vicariously accountable for a co-defendant's actions. See State v. Rogers, 236 N.J. Super. 378, 387 (App. Div. 1989).

Furthermore, the judge did not make appropriate findings on each of the Miller factors. The judge noted that defendant had made strides in pursuing an education and found he had rehabilitated himself.

The judge did not, however, address the other Miller factors, including defendant's claims regarding his impoverished family, his lack of maturity and impulse control, susceptibility to peer pressure, and the extent to which he was or was not directly involved in the commission of the offenses. The judge did not address defendant's alleged lack of understanding of the criminal justice process or whether it had an impact on the verdict and sentence.

The judge also did not explain the basis for reducing the sentence on the aggravated sexual assault from twenty years, with a ten-year parole-bar, to sixteen years, with an eight-year parole-bar. The judge did not provide reasons

30

for reimposing the other sentences and did not explain why a more substantial reduction in the overall aggregate sentence was not warranted.

Moreover, the judge failed to make appropriate findings regarding the consecutive sentences. As noted, where a juvenile has been sentenced to consecutive sentences, the resentencing court is to review the Yarbough guidelines under "a heightened level of care." Zuber, 227 N.J. at 450.

Here, the resentencing court touched upon one of the Yarbough factors, noting that the offenses had been committed closely in time and could be considered "a single period of aberrant behavior." Yarbough, 100 N.J. at 644. However, the judge did not address the other Yarbough factors or explain why consecutive sentences were warranted.

The State argues that the findings of the resentencing judge were sufficient to support the sentence. The State contends the judge thoroughly reviewed the Miller factors in his written opinion of September 5, 2018, which granted defendant's motion for resentencing, and then adopted those findings when resentencing defendant.

However, in his September 5, 2018 opinion, the judge noted that the sentencing court had considered, among other things, defendant's age, his family and home environment, the prospects for rehabilitation, and the

circumstances of the offenses.  The judge pointed out that the sentencing court did not consider those facts under the "purview" of Miller and Zuber.

The judge also noted that the sentencing court had considered the Yarbough factors when the initial sentence was imposed but did not do so "under the purview" of Miller and Zuber.  Thus, the judge's opinion on defendant's motion for resentencing did not provide the essential findings and analysis required by Miller and Zuber.

Accordingly, we reverse the amended JOC and remand the matter to the trial court for resentencing.  On remand, the court shall make appropriate findings of fact and conclusions of law regarding the aggravating and mitigating factors, the Miller factors, and the consecutive sentences.  We express no opinion on what those findings should be, or whether defendant is entitled to a more significant reduction in his sentence than previously ordered.

On remand, the trial court need not consider or address the parole data and statistics that defendant has cited as support for his contention that the State's parole system does not provide a meaning opportunity for release.  As noted previously, information as to the Parole Board's decisions regarding other individuals is not probative.  Tormasi, 466 N.J. Super. at 69.

We also note that while this appeal was pending, the Supreme Court issued its opinion in Jones v. Mississippi, 593 U.S. ___, 141 S.Ct. 1307 (2021). In Jones, the Court held that under Miller and Montgomery, a separate finding of permanent incorrigibility is not required before a person under the age of eighteen who commits murder may be sentenced to life imprisonment without parole. Id. at 1314-15. The Court also held that an on-the-record sentencing explanation with an implicit finding of permanent incorrigibility is not required. Id. at 1319.

The Court noted that in Miller, the Court had stated that a sentencer must have the opportunity to consider a defendant's youth and the "discretion" to impose a sentence other than life without parole. Id. at 1316 (quoting Miller, 567 U.S. at 489). The Court emphasized that its decision was intended to enforce limits imposed by the Eighth Amendment to the United States Constitution and it "does not preclude the States from imposing additional sentencing limits in cases involving defendants under 18 convicted of murder." Id. at 1323. The Court observed:

> States may categorically prohibit life without parole
> for all offenders under 18. Or States may require
> sentencers to make extra factual findings before
> sentencing an offender under 18 to life without parole.
> Or States may direct sentencers to formally explain on
> the record why a life-without-parole sentence is

appropriate notwithstanding the defendant's youth. States may also establish rigorous proportionality or other substantive appellate review of life-without-parole sentences. All of those options, and others, remain available to the States.

[Ibid.]

In Zuber, our Supreme Court noted that both the Eighth Amendment and Article 1, paragraph 12 of the New Jersey Constitution prohibit cruel and unusual punishments. 227 N.J. at 429. The Court stated that to satisfy both constitutional provisions, a Miller analysis is required when a juvenile is sentenced to the practical equivalent of life without parole. Ibid. The Court also held that before a judge imposes "consecutive terms that would result in a lengthy overall term of imprisonment for a juvenile, the court must consider the Miller factors along with other traditional concerns." Ibid. (citing Yarbough, 100 N.J. at 627).

Thus, Jones does not alter the sentencing guidelines mandated by Zuber. In the absence of further direction from our Supreme Court, the trial court must, on remand, apply Zuber and undertake the analysis required by that decision.

In addition, while this appeal was pending, our Supreme Court issued its opinion in State v. Torres, __ N.J. __, __ (2021), in which the Court addressed

34

the standards for imposing consecutive sentences. The Court stated that Yarbough requires the trial court to place on the record a statement of reasons for imposing consecutive sentences, which should address the overall fairness of the sentence. Id. at ___ (slip op. at 26) (quoting State v. Miller, 108 N.J. 112, 122 (1987)).

The Court held that "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment." Id. at ___ (slip op. at 27) (citing Miller, 108 N.J. at 122). Therefore, on remand, the trial court shall undertake the analysis and provide the statement of reasons required by Torres.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3859-18