**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2602-22

GLOUCESTER SOLAR I, LLC,

    Plaintiff-Respondent,

v.

TOWNSHIP OF FRANKLIN
ZONING BOARD OF
ADJUSTMENT,

    Defendant-Appellant.

_____

Argued January 16, 2025 – Decided February 24, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0704-22.

John-Paul Madden argued the cause for appellant (Madden & Madden, PA, attorneys; John-Paul Madden, on the briefs).

Keith A. Davis argued the cause for respondent (Nehmad Davis & Goldstein, PC, attorneys; William J. Kaufmann and Keith A. Davis, on the brief).

PER CURIAM

In this prerogative writs action, defendant Township of Franklin Zoning Board of Adjustment (Zoning Board) appeals from a March 20, 2023 order reversing the Zoning Board's denial of plaintiff Gloucester Solar I, LLC's (Gloucester) application for an interpretation of the Township ordinance pursuant to N.J.S.A. 40:55D-70(b). Gloucester sought to build a commercial solar project in Franklin Township's B Business District (business district), and sought an interpretation finding Franklin Township's business district is an "industrial district" under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-66.11 (2009), and therefore its planned commercial solar energy facility would be a permitted use in the zone. The Zoning Board argues the court erred by ignoring the express language and purpose of the Township's ordinance limiting the zone to "light industrial" uses. We reverse and remand.

I.

The following relevant facts are from the Zoning Board hearing and the prerogative writs trial and are substantially undisputed. Gloucester is a developer of utility-scale commercial solar projects and the contract purchaser of an approximately 255-acre tract of real property in Franklin Township, designated as Block 1902, Lot 1 on the Township's tax map. The property commonly known as 1457 Fries Mill Road consists primarily of vacant farmland

and is located within the zoning district designated as the business district.

On March 16, 2022, Gloucester filed an application with the Zoning Board seeking an interpretation of the Township ordinance, Section 253-113, such that its commercial solar energy facility would be permitted within the business district. Section 253 of the Township ordinance divides the Township into sixteen zoning districts, including business and industrial districts. It provides that the purpose of the business district is:

> to recognize the area west of Fries Mill Road, both north and south of Grant Avenue, as a unique opportunity to create a new business flex zone, and to provide for a variety of new uses including office, commercial, light industrial, residential, and recreation. It is the purpose of this district to protect and provide opportunities for the existing development south of Grant Avenue to expand. At the same time[,] the district will encourage planned business and/or residential village development.
>
> [Township of Franklin, N.J., Code § 253-113 (amended 2019) (hereinafter Franklin Code) (emphasis added).]

Section 253-114 addresses permitted uses within the business district. The Township specifically considers the type of uses permitted based on the size of the property to be developed. Specifically, Subsection 253-114A identifies permitted uses for land with an area of twenty-five acres or less and Section 253-114B covers permitted uses on land over twenty-five acres. The ordinance does

not expressly include solar energy facilities or any other renewable energy systems as permitted uses in the business districts.

On May 3, 2022, the Zoning Board conducted a public hearing to address Gloucester's application. Gloucester's witness, a partner with the original developer of the project, Dakota Power, described the project as:

> a [forty-four] megawatt AC solar photovoltaic project. It's pretty similar technology to other projects you've probably seen many times in this area. It's ground mounted. It'll involve solar panels. They're roughly [three] by [six] feet each. They'll be mounted on a steel racking system, which will have piles that are driven into the ground. The panels will . . . be a collection system. The wires coming off of the panels, they'll collect the power which is initially as direct current. It'll run into inverters, and they'll be—let's say something in the range of [fifteen] to [twenty] of these inverters around the project. . . .

### Testimony of William McManus

McManus, a licensed land surveyor and planner, testified for Gloucester. He supervised the preparation of the plans for the development and believed the development met the criteria for "a renewable energy facility" as defined in the MLUL. McManus further testified the business district "allows for industrial uses, commercial uses, [and] residential uses[,]" and described the development as "ideal" for the proposed property because of the position of the property,

stating "[t]he business zone is located on the western portion of the . . . [T]ownship."

Addressing Section 253-113, McManus explained the purpose of the ordinance is "to recognize a wide variety of uses . . . [a]nd in particular, it allows for commercial, and . . . 'light industrial uses.'"  He noted the ordinance did not provide a definition for industrial, light industrial, or heavy industrial but that "typically, industrial uses are basically defined by performance standards: [n]oise, vibration, glare, dust, things like that would differentiate a light industrial from a heavy industrial use."  McManus noted that the Township's only industrial district includes permitted uses that are both industrial in nature and permitted uses in the business district.

McManus further stated that the business district "takes on a character of an industrial district" in light of the enumerated uses in the ordinance that he defined as industrial.  He explained that in the MLUL, the Legislature expressly defined "renewable energy facilit[ies] on a parcel or parcels of land comprising [of] [twenty] or more contiguous acres that are owned by the same person or entity[,]" as "a permitted use within every industrial district of a municipality." N.J.S.A. 55D-66.11.

After discussing the legislative history, he concluded:

the intent of the ordinance is to allow solar panels, on [twenty] acres or more, that [are] owned by a single person, on lands that also allow industrial uses. We believe that your ordinance allows, on this particular piece of land, industrial uses. Therefore, the conclusion I make is that th[e business district] is an industrial district that qualifies under the [MLUL].

### Testimony of Michael Borelli

Borelli, a Zoning Board solicitor, testified there is a "very clear distinction" between the uses permitted in the business district and the Township's industrial or light manufacturing district, indicating the business district is "not an industrial zone." Specifically, he noted that Section 253-114B also provides for "[b]usinesses, administrative professional government offices, banks, [and] financial institutions" and permits "residential uses including single family[] . . . townhouses, multi-family dwellings, et[ ]cetera." He also highlighted the importance of the "Purpose" section of the ordinance stating that the Township's governing body "decided to set th[e business district] apart from industrial. So, it's a much different zone."

### Testimony of Christopher Dochney

Dochney, the Zoning Board's professional planner, agreed with Borelli's analysis and conclusions, stating, "given the wide range of things that are

A-2602-22

permitted here, [he did]n't know that it's fair to automatically categorize this as an industrial district, the same way you would in manufacturing districts."

Three members of the public—two of whom were landowners of the property at issue—testified at the hearing. One resident asserted that Gloucester's presentation "is sort of an airtight case where they're trying to connect all the loopholes to show that it is indeed an industrial use." One of the owners of the property expressed his support for Gloucester's application. He questioned the definition of business district and what they could do with the property and testified "[business district is] kind of [an] ambiguous zoning term." The other landowner also expressed support for the proposed development and testified the development would "be good for our climate, [and] good for us as a people."

During summation, Gloucester argued the legislative intent behind the MLUL was to promote and encourage renewable energy development and highlighted the amendment to N.J.S.A. 40:55D-66.11 that specifically permits renewable energy facilities in every industrial district. And, that a reasonable interpretation of the ordinance demonstrates that "fifteen out of the [seventeen] listed permitted uses in Section A are industrial in nature[,]" referring to Section

253-114.  By contrast, the Zoning Board emphasized the business district had been previously zoned as an industrial district but was re-zoned to be a business mixed-use hamlet.

The Zoning Board's Decision

At the conclusion of the hearing, the Zoning Board denied Gloucester's application "seeking an interpretation that a utility scale solar energy facility is a permitted use in the [business district] pursuant to N.J.S.A. 40:55D-66.11." The Zoning Board memorialized its decision in a resolution dated June 8, 2022. The resolution stated the business district "is clearly distinguishable from the [l]ight [m]anufacturing [d]istrict as well as the [industrial district].  It is intended to be a [b]usiness [f]lex [z]one with mixed uses, including not only [l]ight [i]ndustrial but office, residential[,] and recreation along with [p]lanned [b]usiness and/or [r]esidential . . . ."

The same day, Gloucester filed a complaint in lieu of prerogative writs in the Chancery Division, challenging the Zoning Board's decision.  Following a period of discovery, the Chancery Division judge conducted a hearing to address whether the business district is essentially an industrial district as contemplated under the MLUL.  The judge further stated "[t]his is an issue that is relevant because under the State [s]tatute[,] if the [business district] is determined to be

an [i]ndustrial [d]istrict, then, the solar power that Gloucester intend to construct would be a permitted use in that [d]istrict."

In a March 9, 2023 written decision, the court adopted a dictionary definition of "industrial"—"of or relating to industry; engaged in industry; characterized by highly developed industries; used in or developed for use in industry . . . ."[1] And, similarly defined "industry" as "a manufacturing activity as a whole; a distinct group of productive or profit-making enterprises" to inform its decision regarding what activity is considered an industrial use. The court concluded "the [business district] is an 'industrial district[,'] and as such, [p]laintiff's planned utility scale commercial solar energy facility is a permitted use pursuant to N.J.S.A. 40:55D-66.11."

The court explained "[t]here is no language in the statute stating that the district be 'exclusively' zoned industrial, just that it be an industrial district." The court did "not find that a mixed-use district cannot also be an industrial district as intended by the [L]egislature." It found persuasive that "the legislative intent in enacting the statute was to promote the use of solar power in the State" and adopted a "broader and more inclusive approach as opposed to a narrow approach as suggested by [the Zoning Board]." The court further

_____

[1] Pursuant to Merriam-Webster's Collegiate Dictionary 638 (11th ed. 2012).

concluded the purpose of the Township ordinance governing the use of the business district is to include the use of light industrial activity and "[t]hus, the clear language of the [o]rdinace is to include industrial uses."

The Zoning Board appealed. It argued the court erred in overruling the Zoning Board's determination by finding the business district is an industrial district as defined in MLUL.

## II.

A zoning board's "interpretation of an ordinance is not entitled to any particular deference and is reviewed de novo because 'the interpretation of an ordinance is a purely legal matter as to which the administrative agency has no particular skill superior to the courts.'" Reich v. Fort Lee Zoning Bd., 414 N.J. Super. 483, 499 (App. Div. 2010) (quoting Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96 (Law Div. 1956)). Likewise, an interpretation of a statute is a question of law that is reviewed de novo. Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 146 (App. Div. 2013) (citing James R. Ientitle, Inc. v. Zoning Bd. of Adjustment, 271 N.J. Super. 326, 329 (App. Div. 1994)). A court's duty is to "construe and apply the statute as enacted." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)). "The Legislature's intent is

the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." Ibid. (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)).

Words contained within the statute should be given their plain meaning and "read . . . in context with related provisions so as to give sense to the legislation as a whole." Ibid.; see also N.J.S.A. 1:1-1 (explaining that a "statute is to be given its plain meaning, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated"). "We will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit." Tumpson v. Farina, 218 N.J. 450, 467-68 (2014) (citing DiProspero, 183 N.J. at 493).

The MLUL provides in pertinent part:

> a renewable energy facility on a parcel or parcels of land comprising [twenty] or more contiguous acres that are owned by the same person or entity shall be a permitted use within every industrial district of a municipality.
>
> For the purposes of this section: "renewable energy facility" means a facility that engages in the production of electric energy from solar technologies, photovoltaic technologies, or wind energy.
>
> [N.J.S.A. 40:55D-66.11 (emphasis added).]

On appeal, the Zoning Board urges us to find the court erred "in its analysis and interpretation of the pertinent portions of the Township's zoning ordinance," and in its ultimate conclusion the Township's business district is an industrial district pursuant to the MLUL. The Zoning Board maintains because neither the Township ordinance nor the MLUL defined the term "industrial," the court improperly focused on the common definitions of "industrial" and "industry" to conclude the uses reflected in Subsection 253-114A of the ordinance were industrial in nature, rather than considering the ordinance as a whole to determine if the Township intended the business district to be an industrial district.

It is axiomatic that a municipal governing body has the clear authority and responsibility to decide and implement land use zones to address the needs of its residents and communities. "A municipality's authority to plan and zone . . . is a delegation of police power." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 242 (2008) (citing Riggs v. Twp. of Long Beach, 109 N.J. 601, 610 (1988)); see also N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 449, 452 (2009).

Section 253-114B covers permitted uses on tracts of more than twenty-five acres—as is the case here—and provides that the land "may be used and

buildings or structures may be erected, altered or used for any of the following purposes and no other[:]"

(1) Planned unit development in accordance with the following guidelines, provided that community-based (package) water and sewer system is provided and a minimum of [fifty percent] of the land is preserved as open space or agriculture:

(a) Planned office and "flex-use" campus, provided that principal structures are provided on individual lots with an area of not less than three acres or more. The following uses may be permitted and no other:

[1] Business, administrative, professional and governmental offices.

[2] Research and development laboratories.

[3] Warehousing and distribution facilities, provided that they occur in buildings in which a minimum of [ten percent] of the building in which the warehouse and distribution occurs is devoted to office use.

[4] Private recreational uses including, and of the same general character as, golf courses, driving ranges, tennis and racquet clubs, swim clubs, batting practice ranges. Outdoor tracks for motorized vehicles and amusement parks are specifically prohibited.

(b) The following uses may be provided in conjunction with a planned unit development on

13

lots with an area of not less than two acres or more:

[1] Banks and other financial institutions.

[2] Adult or child-care centers planned to provide care for a minimum of [twenty-five] individuals in accordance with all applicable local and state regulations.

(c) A <u>mixed-use hamlet</u>, on not less than [fifty] acres, may contain the following uses:

[l] Residential uses including single-family detached, semi[-]attached, townhomes, and multifamily dwellings, subject to the following regulations:

. . . .

[2] A commercial section containing all non[-]residential uses permitted in the Franklinville Village District, and in accordance with the area, bulk and design requirements of that district. Permitted uses include retail stores and services, offices and restaurants. The commercial section shall occupy not more than [fifteen percent] of the area of the mixed-use hamlet, exclusive of lands preserved for open space and agriculture. It shall be located in general proximity to a collector or arterial street.

[emphasis added.]

The ordinance expressly provides for multiple types of uses but does not include solar energy facilities. The court's decision defines industrial district broadly to include Gloucester's proposed commercial solar energy facility. In

14

focusing on the legislative purpose of Section 66.11 of the MLUL, N.J.S.A. 40:55D-66.11, and, in particular, its stated purpose of permitting solar energy facilities within every industrial district of a municipality, the court did not to appreciate that the express language in the MLUL applies only to "industrial districts." Thus, the court mistakenly found the statute does not require the zone to be exclusively industrial because its finding is belied by the express language of the relevant section of the MLUL, which does not define industrial district.

In the absence of any definition of the term industrial district, we have no quarrel with the court's use of dictionary definitions of these terms to determine their plain and ordinary meaning. The court cited Merriam-Webster's Collegiate Dictionary, which defines "industry" as "a manufacturing activity as a whole; a distinct group of productive or profit-making enterprises; a department or branch of a craft, art business, or manufacture; or systemic labor especially for some useful purpose or the creation of something of value." Merriam-Webster's Collegiate Dictionary 638. "Industrial" is defined as "of or relating to industry; engaged in industry; characterized by highly developed industries; used in or developed for use in industry; or derived from human industry." Id. at 637.

We part ways, however, with the court's conclusion there is no distinction between a light business district and an industrial district, which is the basis for

its decision to impose a duty on the Township to permit a renewable energy facility. The court's conclusion is not supported by the express language of the MLUL as there is no evidence that the Legislature intended "light industrial districts" to be subject to the MLUL mandate under N.J.S.A. 40:55D-66.11 as the MLUL expressly refers to industrial district. Courts should not "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." Mountain Hill, LLC v. Zoning Bd. of Adjustment of Twp. of Middletown, 403 N.J. Super. 210, 239 (2008) (quoting Craster v. Bd. of Comm'rs, 9 N.J. 225, 230 (1952)).

Here, the Legislature included only a reference to industrial districts to denote areas where solar energy facilities are permitted, subject to other requirements. Thus, we conclude there is no basis for the court's finding the Township's light business district is an industrial district because the use of the term "light industrial" in the ordinance is indistinguishable from the word "industrial," as used in the MLUL.

Additionally, based on our reading of the relevant provisions of the MLUL and the ordinance at issue, we discern there is a distinction between the terms light industrial and industrial. We reach this conclusion not only by considering the express language of the MLUL and ordinance, but also reviewing the

16

Township's stated purpose in adopting the ordinance. The Township's ordinance stated purpose is to "provide for a variety of new uses including office, commercial, light industrial, residential, and recreation." Franklin Code § 253-113. The Township's use of the term "light industrial" when viewed in the context of the ordinance is indicative of the its intent to limit uses in the business district to include "mixed uses," which do not include the installation of commercial solar energy facilities. Simply because the ordinance references "light industrial" uses and lists a myriad of other business-related uses does not transform the zone into an industrial district as contemplated in the MLUL.

We conclude there is nothing in the MLUL's plain language or the ordinance supporting the court's determination the Legislature intended the MLUL's mandate to apply to mixed-use districts such as the Township's light industrial district. Accordingly, the court's reversal of the decision of the Zoning Board constituted error. DiProspero, 183 N.J. at 492. Nevertheless, Gloucester is not without a remedy because the MLUL provides an applicant with the opportunity to seek a use variance when a proposed use is not permitted. See N.J.S.A. 40:55D-70(d) ("In particular cases for special reasons, [the board may] grant a variance to allow departure from regulations . . . ."). For these reasons, we reverse and remand for the court to affirm the Zoning Board's determination.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION